IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JAMES M. CORSO,                                                    Case No. 3:13-CV-00250-AC

               Plaintiff,                                           FINDINGS AND
                                                                   RECOMMENDATION

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.            

ACOSTA, Magistrate Judge:

       James Corso ("plaintiff") seeks judicial review of a final decision by the Commissioner of

Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act"). *See* 42 U.S.C. §§ 401-403. This Court has

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a

careful review of the record, the Commissioner's decision should be affirmed and this case

dismissed.

Page 1 - FINDINGS AND RECOMMENDATION

*Procedural Background*

Plaintiff applied for DIB on August 27, 2009, alleging disability as of January 17, 2005.  (Tr. 21, 148.)  His application was denied initially and upon reconsideration.  (Tr. 87-94, 98-100.)  A hearing was held on July 7, 2011 before Administrative Law Judge ("ALJ") Catherine Lazuran; plaintiff was represented by counsel and testified, as did a medical[1] and vocational expert ("VE").  (Tr. 42-86.)  On September 23, 2011, ALJ Lazuran issued a decision finding plaintiff not disabled.  (Tr. 21-35.)  After the Appeals Council denied his request to review ALJ Lazuran's decision, plaintiff filed a complaint in this Court.  (Tr. 1-5.)

*Factual Background*

Born on June 7, 1965, plaintiff was 39 years old on the alleged onset date of disability and 46 years old on the date of the ALJ hearing.  (Tr. 46, 148.)  Plaintiff dropped out of high school during the ninth grade but later studied computer science for two semesters at Lane Community College; he has not obtained a GED.  (Tr. 47-48, 170.)  He previously worked as an electronics technician, firefighter, and forklift operator.  (Tr. 77-79, 172-83.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

---

[1] James Haynes, M.D., was the medical expert who testified at the hearing.  (Tr. 60-74.) Pursuant to plaintiff's counsel's objection, the ALJ did "not consider] Dr. Haynes' testimony in reaching a determination in this case" because, in conjunction with Joseph McFarland, M.D., Dr. Haynes also performed a physical exam of plaintiff and provided medical opinion evidence.  (Tr. 30, 547-63.)

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).    The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled.  *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.  *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Id.*; 20 C.F.R. § 404.1520(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S.

at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Id.*; 20 C.F.R. § 404.1520(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. *Id.* at 142; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date through December 31, 2009, the date last insured. (Tr. 23.) At step two, the ALJ determined that plaintiff had the following severe impairments: "a history of left wrist injury and sprain and carpal tunnel syndrome with release." (*Id.*) At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. (Tr. 25.)

Because he did not establish disability at step three, the ALJ continued to analyze how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light exertion work:

> He could lift 20 pounds occasionally and 10 frequently with the right dominant upper extremity, but not with the left upper extremity. He could stand and walk at least six of eight hours and sit at least six of eight hours. He could seldom kneel or crawl and occasionally squat. He could seldom reach above shoulder level with the left non-dominant arm. He could occasionally push and pull with the left arm. He could not climb a ladder, rope, or scaffold. He could occasionally do other crawling. He could not use the left upper extremity for fingering, grasping, or feeling. He could rarely reach with the left arm. He had no such limits regarding the right upper extremity. He needed to avoid concentrated exposure to temperature extremes, vibration, and

dust, fumes, gas, and poor ventilation.  He needed to avoid exposure to hazards, such as unprotected heights, humidity changes, and operating motor equipment.

(*Id.*)  At step four, the ALJ found that plaintiff was unable to perform his past relevant work.  (Tr. 34.)  Finally, at step five, the ALJ determined that there are a significant number of jobs in the national and local economy plaintiff could perform despite his impairments, such as telephone answering service operator and telephone solicitor.  (Tr. 35.)  Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.  (*Id.*)

*Discussion*

Plaintiff argues that the ALJ erred by: (1) rejecting his subjective symptom testimony; (2) finding that Complex Regional Pain Syndrome ("CRPS"), formerly known as Reflex Sympathetic Dystrophy ("RSD"), was not a severe impairment at step two; (3) improperly assessing the medical reports of John Ellison, M.D., John Najera, M.D., James Bell, M.D., Kirk Wong, M.D., John Luckwitz, M.D., and nurse practitioners Penny Steers and Kelly Bell; and (4) failing to account for all of his limitations in the RFC, rendering the step five finding invalid.[2]  (Pl.'s Opening Br. 4.)

---

[2] Although plaintiff lists the ALJ's treatment of lay witness testimony in his summary of the dispositive legal issues, he neither provides any argument concerning this issue within the body of his opening brief nor, for that matter, does he identify the third-parties or statements that were allegedly wrongfully rejected.  (*See generally* Pl.'s Opening Br.)  Similarly, his reply brief does not discuss any alleged error with the ALJ's assessment of the lay witness testimony.  (*See generally* Pl.'s Reply Br.)  Thus, plaintiff neglected to carry his burden in establishing how this alleged error was prejudicial.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation and internal quotations omitted); *see also McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm").  In any event, the Court finds that the ALJ did not commit harmful legal error in evaluating the third-party statements and, accordingly, the ALJ's decision should be affirmed in this regard.

I.    Plaintiff's Credibility

Plaintiff contends the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, to reject his subjective symptom statements concerning the extent and severity of his impairments.  When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted).  If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that he is unable to work due to the "neurological issues [he] contracted because of the [2005] surgery." (Tr. 50-51.)  Plaintiff stated that he lives with his long-term girlfriend and her two teenage children, as well as his teenage son. (Tr. 47.)  He explained that he has not received any medical treatment "for about two years" because his workers compensation insurance would not authorize it. (Tr. 52.)  As a result, plaintiff was not taking any prescription medication or receiving any treatment during that time and, instead, was using "Tylenol[,] Advil[,] [and] Ibuprofen" for his left wrist pain, which ultimately caused ulcers. (Tr. 52, 58.)  As for

activities of daily living, plaintiff reported that "[b]efore my feet became bad, I was able to function to a certain extent helping around the house with dishes, laundry, picking up, walking the dogs [and] so forth"; essentially, he endorsed performing activities that were not limited by "the pain in the left arm." (Tr. 55.) After his feet "became bad," however, plaintiff indicated that he can "not [do] much [and] spend[s] most of my time in bed." (*Id.*) When asked what was wrong with his feet, plaintiff responded that it was still medically undetermined, but that the symptoms "mimic the complex regional pain syndrome that I have in my left arm." (Tr. 55-56.)

After summarizing plaintiff's hearing testimony, the ALJ found that his medically determinable impairments[3] could reasonably be expected to produce some degree of symptoms, but that plaintiff's statements regarding the extent of these symptoms were not fully credible due to his activities of daily living, drug-seeking behavior and inconsistent effort on exams, history of conservative medical treatment, and the lack of objective medical findings. (Tr. 26-34.)

Notably, the ALJ resolved that plaintiff's "daily activities have been quite involved," indicating that his "functional limitations were not as significant as alleged." (Tr. 28.) Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a basis for discrediting it. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ may discredit a claimant's testimony when he reports activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment") (citations

---

[3] The ALJ found that plaintiff's alleged foot pain was not medically-determinable or severe at step two and plaintiff does not now challenge this finding. (Tr. 23; s*ee generally* Pl.'s Opening Br.; Pl.'s Reply Br.) As plaintiff acknowledges, this condition is currently undiagnosed and an independent review of the record reveals that symptoms related thereto primarily correlate to the period after his insured status expired. (Tr. 55-56, 582, 936, 967-72, 987-93.)

Page 7 - FINDINGS AND RECOMMENDATION

omitted).

In this case, substantial evidence supports the ALJ's conclusion. In November 2009, approximately one month prior to the date last insured, plaintiff reported that he spends his days caring for three teenagers, two dogs, and his home. (*See* Tr. 197-203 (plaintiff's Adult Function Report); *see also* Tr. 189-196 (Third-Party Adult Function Report prepared by Michelle Potts, plaintiff's girlfriend).) A typical day entails waking in the morning, showering, dressing, taking care of his and his girlfriend's children, preparing simple meals, performing light cleaning and laundry for two to three hours, using the computer, and grocery shopping. (Tr. 189-93, 197-200; *see also* Tr. 205, 319, 567, 820.) Plaintiff endorsed "no problems" with personal care, walking, following written or spoken instructions, or authority figures. (Tr. 194, 198, 202.) In his free time, plaintiff took photographs and spent time with his family. (Tr. 193, 201.) He also goes outside daily and is able to drive a car and leave the house independently. (Tr. 199-200.) In sum, the ALJ reasonably resolved that these non-work activities demonstrated the ability to perform a limited range of light work. (Tr. 28-29.)

Additionally, the ALJ determined that plaintiff's inconsistent effort on exams and drug-seeking behavior undermined his credibility. Evidence of self-limiting or drug-seeking behavior can serve as a basis for discrediting a claimant's testimony. *Thomas*, 278 F.3d at 959; *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Here, as the ALJ denoted, test results suggested that plaintiff gave "submaximal effort" during a functional assessment with physical therapist James Franck. (Tr. 317, 778-81.) Drs. McFarland and Haynes also reported that plaintiff "presented himself in a somewhat difficult manner in that his attorney advised him not to be particularly cooperative with the examination and only to do what he felt like doing [such that] the examination

Page 8 - FINDINGS AND RECOMMENDATION

was somewhat incomplete." (Tr. 561.) Further, plaintiff was discharged from the care of Edward McCluskey, M.D., for becoming combative with clinical staff after testing positive for non-prescribed opiate medications. (Tr. 436-39, 504; *see also* Tr. 286 (plaintiff hanging up on a medical provider after they refused to prescribe additional opiates).) While the Court acknowledges that plaintiff offers an alternative interpretation of this event, such that this evidence may be interpreted more favorably to him, the ALJ's analysis was nonetheless reasonable and therefore must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold an ALJ's rational interpretation of the evidence).

The foregoing discussion reveals that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. *Carmickle*, 533 F.3d at 1162-63. Thus, ALJ's credibility finding should be affirmed.

## II.    Step Two Finding

Plaintiff next argues that the ALJ failed to include his CRPS as a severe impairment at step two. At step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe" if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) ("[a]n impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work") (citation and internal quotations omitted). The step two threshold is low; the Ninth Circuit describes it as a "de

minimus screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, Case No. 3:10–CV–06120–MO, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

The record before the Court contains multiple references to issues associated with plaintiff's left arm, wrist, or hand; however, his examining and treating doctors differ in their diagnoses. (*See, e.g.*, Tr. 288-91 (Dr. Bell diagnosing plaintiff in April 2006 with CRPS), 314 (Stephen Zinsmeister, M.D., diagnosing plaintiff in May 2006 with "[s]prain left wrist with scapholunate ligament tear and peripheral triangular fibrocartilage complex tear, status post surgical repair" and "[p]ossible ulnar neuropathy left," but stating that he was "unable to diagnose on a more-probable-than-not basis complex regional pain syndrome or reflex sympathetic dystrophy as the claimant does not meet the criteria"), 406 (Dr. Wong diagnosing plaintiff in June 2006 with "[l]eft wrist sprain with residual stiffness and possible complex regional pain syndrome Type II with underlying carpal tunnel syndrome").) In resolving this ambiguity in the record, the ALJ determined that plaintiff's "history of left wrist injury and sprain and carpal tunnel syndrome with release" were severe at step two. (Tr. 23.)

Accordingly, because the ALJ resolved step two in plaintiff's favor, any error in designating a specific impairment as severe will not result in reversible error unless the RFC assessment failed to adequately account for plaintiff's well-supported limitations. *See Jensen v. Astrue*, Case No. 6:11–CV–06298–ST, 2012 WL 4470507, *2-3 (D. Or. Sept. 25, 2012) (ALJ did not err at step two in determining that the claimant's post-traumatic stress disorder and anxiety were non-severe because he identified other medically determinable severe physical and mental impairments)

Page 10 - FINDINGS AND RECOMMENDATION

(citations omitted); *see also Burch*, 400 F.3d at 682-84 (even assuming the ALJ erred in finding that the claimant's obesity was non-severe, such an error was harmless because step two was resolved in the claimant's favor and the ALJ considered obesity in formulating the RFC). The RFC is the most a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant medical and other evidence." SSR 96-8p, *available at* 1996 WL 374184; 20 C.F.R. § 404.1545(a). However, the ALJ's RFC must only incorporate limitations supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Here, when formulating the RFC, the ALJ expressly considered plaintiff's diagnosis of CRPS, as well as the reports of several medically acceptable and non-medically acceptable sources, including but not limited to Dr. Bell, Dr. Wong, Dr. Ellison, Dr. Najera, and Ms. Bell. (Tr. 27-34). Nevertheless, based on plaintiff's significant activities of daily living during the adjudication period, in conjunction with the medical evidence of record, the ALJ resolved that plaintiff's limited use of his left arm did not render him unable to work. The ALJ determined, however, that several RFC restrictions were warranted as a result of this impairment. Specifically, the ALJ found that plaintiff could not lift, carry, or perform fingering, grasping, or feeling with his left hand or arm. (Tr. 25.) The ALJ also concluded that plaintiff "could seldom reach above shoulder level," "rarely reach," and "occasionally push and pull" with the left non-dominant arm. (*Id.*) In addition, the ALJ's RFC precluded plaintiff from climbing ladders, ropes, or scaffolds and required him "to avoid concentrated exposure to temperature extremes, vibration, . . . dust, fumes, gas, . . . poor ventilation[,] [and] hazards, such as unprotected heights, humidity changes, and operating motor

equipment." (*Id.*)  Thus, the ALJ's RFC principally authorizes tasks that do not require plaintiff to use his left, non-dominant hand or arm.

Critically, plaintiff does not identify what further restrictions flow from this impairment or address how the ALJ's alleged error in assessing his CRPS was harmful.  *See generally* Pl.'s Opening Br.; Pl.'s Reply Br.  The burden of establishing that an error is harmful, however, falls on the party attacking an administrative agency's determination.  *McLeod*, 640 F.3d at 887 (citation omitted).  Without more, plaintiff cannot establish that this condition resulted in different or more extreme limitations than those already identified in the RFC, especially in light of the fact that the majority of plaintiff's medical providers opined that he was capable of performing work generally consistent therewith.  (*See, e.g.*, Tr. 426 (Dr. Wong releasing plaintiff to work in November 2006 but with "no lifting greater than 10 lbs. with the left arm"), 561-63 (Drs. McFarland and Haynes finding, in April 2008, that "[t]here are no restrictions that prevent the claimant from returning to work"), 566-75 (occupational therapist and hand specialist Susan Nosacka reporting, in June 2009, that plaintiff could "[r]eturn to work, full-time, at the Light level of physical demand"), 942-57 (William Platt, M.D., and John Coletti, Jr., M.D., opining, in February 2011, that plaintiff  "is capable of sedentary to light physical demand activities including with the right upper extremity, but is restricted in the left upper extremity with only occasional ability to light, carry, and push and pull. He cannot repetitively use the left hand and likely has limitation of fine motor activity with this hand [but there] is no indication of any restrictions of sitting, standing, walking, or combinations of these activities").)

In other words, even assuming the ALJ erred in determining that plaintiff's CRPS was non-severe at step two, such an error was harmless.  The ALJ's decision should be upheld in this regard.

III.    Assessment of the Medical Evidence

Plaintiff next asserts that the ALJ impermissibly rejected the medical reports of Dr. Ellison, Dr. Najera, Dr. Bell, Dr. Wong, Dr. Luckwitz, Ms. Steers, and Ms. Bell.

A.    Acceptable Medical Source Evidence

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  More weight to afforded to "opinions that are explained than to those that are not, . . .  and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  *Id.*

i.    Dr. Ellison

In January 2010, plaintiff attended a one-time examination with Dr. Ellison. (Tr. 582-84.) The doctor reviewed chart notes from Ms. Bell and a one-page disability report, performed a physical examination, and interviewed plaintiff.  (*Id.*)  Based on this evidence, Dr. Ellison provided the following diagnoses: CRPS in the left wrist and hand, peripheral neuropathy in both feet, GERD, mild hypertension, overweight, and chronic fatigue and poor sleep.  (Tr. 584.) Dr. Ellison, however, did not provide an assessment of plaintiff's functional abilities.  (Tr. 582-84.)

The ALJ discredited Dr. Ellison's report because it was "vague and ambiguous and not well reasoned," and "based largely on [plaintiff's] subjective report of symptoms." (Tr. 30.) In so finding, the ALJ noted that the "doctor [only] saw minimal medical records" and that his conclusions were not supported by his clinical findings: "[h]e found, on exam, that [plaintiff] had normal extremities so it is unclear what basis he had for referring to peripheral neuropathy of the feet, except for [plaintiff's] allegations. He did not refer to any specific tests he did regarding [plaintiff's] left arm except to say he had difficulty closing the hand into a fist." (*Id.*) The ALJ also observed that "as an internist, Dr. Ellison lacks that expertise of other doctors (such as Dr. Haynes and Dr. Platt) who are neurologists." (*Id.*) Further, as the ALJ recognized, Dr. Ellison "did not comment on [plaintiff's] functional limitations in his report [such that it] is of little use in evaluating [plaintiff's] condition." (*Id.*)

An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition). In addition, an ALJ need not accept a medical opinion that is brief, conclusory, inadequately supported by clinical findings, or based on the claimant's non-credible testimony. *Thomas*, 278 F.3d at 957.

A review of Dr. Ellison's report confirms the absence of any named mental or physical limitations, such as the inability to concentrate or to lift, stoop, walk, or stand. In fact, this report

Page 14 - FINDINGS AND RECOMMENDATION

offers an opinion only as to plaintiff's underlying conditions; because Dr. Ellison did not review plaintiff's entire medical record and, further, his chart notes and clinical findings do not explain his diagnoses, it was reasonable for the ALJ to conclude that his opinion was based largely on plaintiff's uncredible self-reports. (Tr. 582-84.) In sum, the ALJ provided legally sufficient reasons, supported by substantial evidence, for rejecting the evaluation of Dr. Ellison.

      ii.    <u>Dr. Najera</u>

In April 2011, nearly a year and a half after the date last insured, plaintiff initiated care with Dr. Najera. (Tr. 967.) After reviewing plaintiff's medical records, interviewing plaintiff, and performing a physical examination, Dr. Najera diagnosed plaintiff with CRPS in the left arm, lower extremity weakness, dysesthesias of the feet, anemia, and a tobacco use disorder. (Tr. 967-81, 987-89.) In June 2011, Dr. Najera completed a check-the-box form prepared by plaintiff's attorney, in which he opined that plaintiff suffered from the above-listed conditions. (Tr. 990.) In terms of functional limitations, Dr. Najera marked that plaintiff could: never climb, balance, stoop, bend, kneel, crouch, or crawl; never reach, handle, finger, feel, lift, or carry with his left hand or arm; occasionally lift and/or carry less than ten pounds with his right arm; stand and/or walk for 30 minutes at one time and for a total of two hours in an eight-hour workday; sit for one hour at one time and for a total of one hour in an eight-hour workday; and engage in limited pushing, pulling, reaching, handing, fingering, and feeling with the right hand or arm. (Tr. 991-92.) The doctor also reported that pain, fatigue, weakness, and nervousness would frequently interfere with plaintiff's attention and concentration for even simple tasks. (Tr. 992.) Finally, Dr. Najera checked the box indicating plaintiff's allegedly disabling conditions persisted "since on or before December 31, 2009." (Tr. 993.)

Page 15 - FINDINGS AND RECOMMENDATION

The ALJ afforded Dr. Najera's opinion "little or no weight because it is not consistent with the longitudinal record," including his own chart notes and plaintiff's activities of daily living.  (Tr. 31.)  Additionally, the ALJ rejected this opinion because "Dr. Najera lacks the expertise of neurologists and orthopedists who have examined [plaintiff and he] appears to have relied on subjective complaints."  (*Id.*)  It is well-established that an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"); *see also Thomas*, 278 F.3d at 957.

In this case, as the ALJ noted, Dr. Najera's opinion is conclusory and not accompanied by reference to any objective findings.  (Tr. 990-93.)  The only narrative descriptions are brief, fragmented sentences that do not refer to the doctor's own chart notes or any other evidence.  (*Id.*)  Further, the doctor's treating relationship with plaintiff consisted mostly of prescribing and refilling medications, and his chart notes primarily reflect plaintiff's subjective statements; the only cursory objective evaluations that he performed on plaintiff yielded results largely within the normal range.  (Tr. 967-81, 987-89.)  For instance, Dr. Najera indicated that plaintiff could never climb, balance, stoop, bend, kneel, crouch, or crawl, yet his records reflect that plaintiff's "[g]ait is steady and balanced," and that his lower extremities had normal bulk and tone.  (Tr. 968, 991.)  Thus, as with Dr. Ellison, it was reasonable for the ALJ to resolve that the restrictions outlined by Dr. Najera were based on plaintiff's rejected testimony.  As such, the ALJ provided legally sufficient reasons, supported by substantial evidence, to discredit Dr. Najera's opinion.

### iii.    Drs. Bell, Wong, and Luckwitz

During primarily 2005 and 2006, plaintiff sought treatment for left wrist pain from Drs. Bell, Wong, and Luckwitz. (Tr. 264-83 (treatment notes from Dr. Luckwitz), 284-306 (treatment notes from Dr. Bell), 332-434 (treatment notes from Dr. Wong).) Dr. Wong, an orthopedic surgeon, performed two surgeries on plaintiff's left wrist and referred him to Dr. Luckwitz for stellate ganglion block injections. (Tr. 266.) Dr. Luckwitz, in turn, referred plaintiff to Dr. Bell for further evaluation. (Tr. 288.) As plaintiff denotes, all three doctors opined, at various points, that he suffered from CRPS or RSD. (*See, e.g.*, Tr. 268, 392, 422.) While their chart notes reflect periodic physical examinations and plaintiff's subjective reports, these doctors never offered an opinion about plaintiff's functional limitations; these reports are therefore duplicative of other evidence of record to the extent they acknowledge a diagnosis of CRPS. (Tr. 264-306, 332-434.) In other words, there is no evidence from Drs. Bell or Luckwitz inhering to plaintiff's ability to work, and Dr. Wong released plaintiff to return to full-time employment after each of his surgeries. (Tr. 381, 430.)

The ALJ discussed evidence from Drs. Bell and Wong in his decision but did not afford any particular weight thereto. (Tr. 26-28.) The ALJ, however, did not address Dr. Luckwitz's treatment notes. (Tr. 21-35.) Regardless, because the reports of Drs. Bell. Wong, and Luckwitz did not contain any functional limitations, they were not probative as to what kind of work plaintiff could perform despite his impairments and, therefore, the ALJ was not required to formally assess, or even discuss, them. *See Johnson*, 60 F.3d at 1432; *Morgan*, 169 F.3d at 601; *Meanel*, 172 F.3d at 1114; *see also Hurter v. Astrue*, 465 Fed.Appx. 648, 652 (9th Cir. 2012) (ALJ did not err in failing to discuss or afford weight to medical reports that were not significant probative evidence) (citing

*Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Furthermore, as discussed above, the ALJ expressly considered plaintiff's diagnosis of CRPS in formulating the RFC.  Accordingly, the ALJ's assessment of the acceptable medical source evidence should be upheld.

B.    Non-Acceptable Medical Source Evidence

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work.  20 C.F.R. § 404.1513(a), (d).  Non-acceptable medical sources include, but are not limited to, nurse practitioners.  20 C.F.R. § 404.1513(d); SSR 06-03p, *available at* 2006 WL 2329939.  To disregard the opinion of a non-acceptable medical, or lay, source, the ALJ need only provide a reason that is "arguably germane" to that witness.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  In rejecting such statements, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114 (citations omitted).

i.    Ms. Bell

In May 2006, plaintiff established care with Ms. Bell for assistance with pain management.  (Tr. 694-95.)  From May 2006 through October 2006, and again from November 2007 through December 2009, plaintiff saw Ms. Bell approximately every month to talk about his impairments and

Page 18 - FINDINGS AND RECOMMENDATION

for medication refills.  (Tr. 615-97.)  In February 2008, Ms. Bell wrote a letter, in which she provided information and treatment options for CRPS, and concluded that plaintiff "will never be able to use his left arm, wrist, or hand due to this rate and unusual pain complex." (Tr. 747-49.) In August 2009, Ms. Bell wrote a second opinion letter, again discussing CRPS in general terms and stating further that plaintiff is unable to engage in sustained work activities as a result of this impairment. (Tr. 899-901.)  In a chart note from September 2009, Ms. Bell reiterated that she considered plaintiff disabled and that he could not be expected to find a "job in the worst US economy imaginable." (Tr. 618.)

The ALJ rejected Ms. Bell's opinion: "[a]lthough Nurse Bell has treated and observed [plaintiff's] impairment over time, the usefulness of her opinion is limited because she failed to explain persuasively her conclusory statement that [plaintiff] is disabled.  She did not provide examples of medical findings and specific functional limitation that would assist in assessing residual functional capacity." (Tr. 32.)  The ALJ also noted that Ms. Bell is not "an acceptable medical source" and that her opinion was "not consistent with the record as a whole." (*Id.*) Inconsistency with the medical record is a germane reason to reject the opinion of a lay source. *Lewis*, 236 F3d at 511 (citation omitted).  In addition, as discussed above, an ALJ need not accept an opinion that is brief, conclusory, inadequately supported by clinical findings, or based on the claimant's uncredible testimony.  *Thomas*, 278 F.3d at 957.

The record supports the ALJ's finding here.  Ms. Bell's reports are silent as to plaintiff's functional abilities.  (Tr. 615-97, 747-49, 899-901.)  Her chart notes also do not contain or refer to any clinical findings that would support her conclusions; they only document plaintiff's subjective reports concerning his symptoms and, occasionally, Ms. Bell's observations of those symptoms. (Tr.

615-97.)  Moreover, Ms. Bell's assessment is directly contravened by the opinions of several other acceptable and non-acceptable medical sources.  (*Compare* Tr. 618, 747-49, 899-901 (opinion of Ms. Bell), *with* Tr. 561-63 (opinion of Drs. McFarland and Haynes), 566-75 (opinion of Ms. Nosacka), 942-57 (opinion of Drs. Platt and Coletti).)  Thus, the ALJ set forth germane reasons, supported by substantial evidence, for disregarding Ms. Bell's disability opinion.

     ii.   <u>Ms. Steers</u>

In January 2008, Ms. Steers, who was part of the same practice group as Ms. Bell, wrote a letter on behalf of plaintiff's disability claim; the record, however, does not contain any treatment records from Ms. Steers.  (Tr. 745.)  In her opinion letter, Ms. Steers stated that plaintiff suffers from RSD in his left hand, arm, and shoulder.  (*Id.*)  She concluded this condition "will prevent [plaintiff] from working for at least 12 months but most likely much longer than that."  (*Id.*)

The ALJ did not discuss Ms. Steers's report in his decision.  (Tr. 21-35.)  Yet the Court finds, to the extent the ALJ implicitly rejected Ms. Steers's evaluation, such an error was harmless.  *See Molina*, 674 F.3d at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").  Like Ms. Bell, Ms. Steers did not assess any functional limitations and, additionally, her opinion is brief, conclusory, and not supported by or linked to any clinical findings. (Tr. 745.)  Moreover, for the same reasons discussed above, Ms. Steers's report is inconsistent with the other evidence of record. The ALJ therefore did not commit harmful, reversible error in failing to address Ms. Steers's evaluation.  As such, the ALJ's evaluation of the non-acceptable medical source evidence should be affirmed.

IV.    RFC and Step Five Finding

Lastly, plaintiff contends that the ALJ's RFC and, by extension, the hypothetical questions posed to the VE were erroneous because they did not incorporate all of the limitations outlined in his testimony and the reports of Dr. Ellison, Dr. Najera, Dr. Bell, Dr. Wong, Dr. Luckwitz, Ms. Steers, and Ms. Bell.

As discussed above, plaintiff's statements were properly discredited by the ALJ.  Further, the ALJ did not err in evaluating the reports of Ms. Steers or Ms. Bell, or of Drs. Ellison, Najera, Bell, Wong, and Luckwitz.  In other words, the ALJ's determination that plaintiff retains the ability to perform a limited range of light work is rational and therefore may not be disturbed.  *Batson*, 359 F.3d at 1198.  Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-76 (9th Cir. 2008); *see also Bayliss*, 427 F.3d at 1217-18 (ALJ could rely on VE's testimony, even though hypothetical presented to VE did not include all of the claimant's alleged limitations, where hypothetical contained restrictions that the ALJ found credible and supported by substantial evidence).

### Recommendation

For the reasons stated above, the Commissioner's decision should be AFFIRMED and this case DISMISSED.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the

right to appeal the District Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir.

1991).  If no objections are filed, review of the Findings and Recommendation will go under

advisement on that date.  If objections are filed, any party may file a response within fourteen days

after the date the objections are filed.  Review of the Findings and Recommendation will go under

advisement when the response is due or filed, whichever date is earlier.

DATED this 10th day of February,  2014.


_____
/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge